# EXHIBIT A

BRIAN SANDOVAL
*Governor*

**STATE OF NEVADA**

BRUCE H. BRESLOW
*Director*

SCOTT J. KIPPER
*Commissioner*



DEPARTMENT OF BUSINESS AND INDUSTRY
**DIVISION OF INSURANCE**
2501 East Sahara Avenue, Suite 302
Las Vegas, Nevada 89104-4137
(702) 486-4009   •   Fax (702) 486-4007
Website: doi.nv.gov
E-mail: insinfo@doi.nv.gov

April 23, 2013

Ace American Insurance Company
Attn: Saverio M. Rocca, Esq.
436 Walnut Street, WA04K
Philadelphia, PA 19106

RE:    Steven A. Holper, et al. vs. Ace American Insurance Company
       District Court, Clark County, Nevada
       Case No. A-13-679950-P

Dear Mr. Rocca:

Enclosed please find the following documents: Summons and Petition for Declaratory Relief, and Other Supplemental Relief. These documents have been served upon the Commissioner of Insurance as your attorney for service of process on April 18, 2013.

The appropriate action should be taken immediately, as you may only have 30 days from the date of this service to respond.

If you have any questions regarding this service, please advise.

Sincerely,

SCOTT J. KIPPER
Commissioner of Insurance

By:    *Rhonda Kelly*
       RHONDA KELLY
       Service of Process Clerk

Enclosures

c:    George R. Carter, Esq.

APR 2 0 2013

## PROOF OF SERVICE

I hereby declare that on this day I served a copy of the Summons and Petition for Declaratory Relief, and Other Supplemental Relief upon the following defendant in the within matter, by shipping a copy thereof, via Certified mail, return receipt requested, to the following:

Ace American Insurance Company
Attn: Saverio M. Rocca, Esq.
436 Walnut Street, WA04K
Philadelphia, PA 19106
CERTIFIED MAIL NO. 7012 3460 0001 6398 2796

I declare, under penalty of perjury, that the foregoing is true and correct.

DATED this 23rd day of April, 2013.

RHONDA KELLY
Employee of the State of Nevada
Department of Business and Industry
Division of Insurance

RE:   Steven A. Holper, et al. vs. Ace American Insurance Company
      District Court, Clark County, Nevada
      Case No. A-13-679950-P

State of Nevada, Division of Insurance
This document on which this certificate
is stamped is a full, true and correct
copy of the original.

Date: 4/23/13   By: Rhonda Kelly

-1-

BRIAN SANDOVAL
*Governor*

STATE OF NEVADA

BRUCE H. BRESLOW
*Director*

SCOTT J. KIPPER
*Commissioner*



DEPARTMENT OF BUSINESS AND INDUSTRY
DIVISION OF INSURANCE
2501 East Sahara Avenue, Suite 302
Las Vegas, Nevada 89104-4137
(702) 486-4009    •    Fax (702) 486-4007
Website: doi.nv.gov
E-mail: insinfo@doi.nv.gov

April 23, 2013

George R. Carter, Esq.
Law Offices of George R. Carter & Associates
1050 East Sahara Avenue, Suite 301
Las Vegas, NV 89104

RE:    Steven A. Holper, et al. vs. Ace American Insurance Company
       District Court, Clark County, Nevada
       Case No. A-13-679950-P

Dear Mr. Carter:

     The Division received the service of process documents on April 18, 2013 regarding the above-entitled matter. Service has been completed on defendant Ace American Insurance Company this date and enclosed are the following:

       1.    A copy of our letter to Ace American Insurance Company dated April 23, 2013
       2.    A certified copy of the Proof of Service dated April 23, 2013; and
       3.    Your receipt in the amount of $30.00.

     Pursuant to *Nevada Revised Statutes* 680A.260, 685A.200, and 685B.050, all documents after initial service of process may be served directly to the party.

     If you have any questions regarding this service, please so advise.

                                        Sincerely,

                                        SCOTT J. KIPPER
                                        Commissioner of Insurance

                        By:    *Rhonda Kelly*
                                        RHONDA KELLY
                                        Service of Process Clerk

Enclosures

c:    Ace American Insurance Company



# DISTRICT COURT
## CLARK COUNTY, NEVADA

STEVEN A. HOLPER, and KARA HOLPER,  )
                                     )
                                  )     CASE NO.: A-13- 679950-P
           Petitioners,           )     DEPT. NO.: VI
                                      )
vs.                                     )
                                      )
ACE AMERICAN INSURANCE COMPANY,   )
                                      )
           Respondent.          )
                                      )

## SUMMONS

**NOTICE! YOU HAVE BEEN SUED. THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS. READ THE INFORMATION BELOW.**

**TO THE DEFENDANT:** A civil Complaint has been filed by the Plaintiff(s) against you for the relief set forth in the Complaint.

### ACE AMERICAN INSURANCE COMPANY

    1. If you intend to defend this lawsuit, within 20 days after this Summons is served on you, exclusive of the day of service, you must do the following:

        a. File with the Clerk of this Court, whose address is shown below, a formal written response to the Complaint in accordance with the rules of the Court, with the appropriate filing fee.

        b. Serve a copy of your response upon the attorney whose name and address is shown below.

    2. Unless you respond, your default will be entered upon application of the Plaintiff(s) and failure to so respond will result in a judgment of default against you for the relief demanded in the Complaint, which could result in the taking of money or property or other relief requested in the Complaint.

    3. If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response may be filed on time.

    4.  The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission members and legislators each have 45 days after service of this Summons within which to file an Answer or other responsive pleading to the Complaint.

Submitted by:

STEVEN D. GRIERSON
CLERK OF COURT

KADIRA BELKRUM

*George R. Carter*    By: _____    Date

GEORGE R. CARTER, ESQ.            DEPUTY CLERK
NEVADA BAR NO. 000169           Regional Justice Center
Attorney for Petitioners              200 Lewis Avenue
1050 E. Sahara Ave., Suite 301     Las Vegas, Nevada 89155
Las Vegas, Nevada 89104
(702) 384-8951

**NOTE: When service is by publication, add a brief statement of the object of the action. See Nevada Rules of Civil Procedure 4(b).**

### AFFIDAVIT OF SERVICE

STATE OF                  )
                                 ) ss:
COUNTY OF              )

_____, being duly sworn says: That at all times herein affiant was and is over 18 years of age, not a

party to nor interested in the proceeding in which this affidavit is made. That affiant received ____copy(ies) of the

Summons and Complaint, _____ on the _____ day of _____, 20 _____ and served the same on the _____

day of _____ 20 _____ by:

(Affidavit must complete the appropriate paragraph)

1.      Delivery and leaving a copy with the Defendant _____ at (state address) _____

2.      Serving the Defendant _____ by personally delivering and leaving a copy with

             _____, a person of suitable age and discretion residing at the Defendant's usual place

             of abode located at (state address) _____

                   [ Use paragraph 3 for service upon agent, completing (a) or (b)]

3.      Serving the Defendant _____ by personally delivering and leaving a copy at (state address)

             _____

         (a)      With _____ as _____, an agent lawfully designated by statute to accept service of

                 process.

         (b)      With _____, pursuant to NRS 14.020 as a person suitable age and discretion at the

                 above address, which address is the address of the resident agent as shown on the current certificate

                 of designation filed with the Secretary of State.

4.      Personal depositing a copy in a mail box of the United States Post Office, enclosed in a sealed envelope, postage

             prepaid (Check appropriate method):

                               _____    Ordinary mail

                               _____    Certified mail, return receipt requested

                               _____    Registered mail, return receipt requested

         addressed to the Defendant _____ at Defendant's last known address which is (state address)

         _____

I declare under penalty of perjury under the law of the State of Nevada that the foregoing is true and correct.

EXECUTED this _____ day of _____, 20_____.

_____
Signature of person making service

CIVIL COVER SHEET    A-13-679950-P

County, Nevada    VI

Case No. _____
*(Assigned by Clerk's Office)*

## I. Party Information

Plaintiff(s) (name/address/phone):
Steven A. Holper, and
Kora Holper
Attorney (name/address/phone): (702) 384-8952
George R. Carter, Esq.
1050 E. Sahara Ave. #301, Las Vegas, NV
89104

Defendant(s) (name/address/phone):
Ace American Insurance Company
Attorney (name/address/phone):

## II. Nature of Controversy (Please check applicable bold category and applicable subcategory, if appropriate)

☐ **Arbitration Requested**

### Civil Cases

| Real Property | Torts |
|---|---|

**Real Property**

☐ **Landlord/Tenant**
  ☐ Unlawful Detainer
☐ **Title to Property**
  ☐ Foreclosure
  ☐ Liens
  ☐ Quiet Title
  ☐ Specific Performance
☐ *Condemnation/Eminent Domain*
☐ **Other Real Property**
  ☐ Partition
  ☐ Planning/Zoning

**Negligence**
☐ **Negligence – Auto**
☐ **Negligence – Medical/Dental**
☐ **Negligence – Premises Liability**
    (Slip/Fall)
☐ **Negligence – Other**

**Torts**
☐ **Product Liability**
  ☐ Product Liability/Motor Vehicle
  ☐ Other Torts/Product Liability
☐ **Intentional Misconduct**
  ☐ Torts/Defamation (Libel/Slander)
  ☐ Interfere with Contract Rights
☐ **Employment Torts** (Wrongful termination)
☐ **Other Torts**
  ☐ Anti-trust
  ☐ Fraud/Misrepresentation
  ☐ Insurance
  ☐ Legal Tort
  ☐ Unfair Competition

| Probate | Other Civil Filing Types |
|---|---|

**Probate**

Estimated Estate Value: _____

☐ **Summary Administration**
☐ **General Administration**
☐ **Special Administration**
☐ **Set Aside Estates**
☐ **Trust/Conservatorships**
  ☐ Individual Trustee
  ☐ Corporate Trustee
☐ **Other Probate**

**Other Civil Filing Types**

☐ **Construction Defect**
  ☐ Chapter 40
  ☐ General
☐ **Breach of Contract**
  ☐ Building & Construction
  ☐ Insurance Carrier
  ☐ Commercial Instrument
  ☐ Other Contracts/Acct/Judgment
  ☐ Collection of Actions
  ☐ Employment Contract
  ☐ Guarantee
  ☐ Sale Contract
  ☐ Uniform Commercial Code
☐ **Civil Petition for Judicial Review**
  ☐ Foreclosure Mediation
  ☐ Other Administrative Law
  ☐ Department of Motor Vehicles
  ☐ Worker's Compensation Appeal

☐ **Appeal from Lower Court** (*also check applicable civil case box*)
  ☐ Transfer from Justice Court
  ☐ Justice Court Civil Appeal
☐ **Civil Writ**
  ☐ Other Special Proceeding
☑ **Other Civil Filing**
  ☐ Compromise of Minor's Claim
  ☐ Conversion of Property
  ☐ Damage to Property
  ☐ Employment Security
  ☐ Enforcement of Judgment
  ☐ Foreign Judgment – Civil
  ☐ Other Personal Property
  ☐ Recovery of Property
  ☐ Stockholder Suit
  ☑ Other Civil Matters

## III. Business Court Requested (Please check applicable category; *for Clark or Washoe Counties only.*)

☐ NRS Chapters 78-88
☐ Commodities (NRS 90)
☐ Securities (NRS 90)

☐ Investments (NRS 104 Art. 8)
☐ Deceptive Trade Practices (NRS 598)
☐ Trademarks (NRS 600A)

☐ Enhanced Case Mgmt/Business
☐ Other Business Court Matters

04-10-2013
Date

*George R. Carter*
Signature of initiating party or representative

*See other side for family-related case filings.*

Form PA 201
Rev. 2.5E



Electronically Filed
04/11/2013 03:33:00 PM

CLERK OF THE COURT

1  **PETITION**

2

3  George R. Carter, Esq., Lead Counsel
   Nevada Bar No. 000169
4  LAW OFFICES OF GEORGE R. CARTER & ASSOCIATES
   1050 East Sahara Avenue, Suite 301
4  Las Vegas, Nevada 89104
5  (702) 384-8951 office
   (702) 384-0475 fax
6  email: vegasatty@msn.com

7

8  Mitchell L. Posin, Esq., Co-Counsel
   Nevada Bar No. 002840
   LAW OFFICES OF MITCHELL POSIN, CHARTERED
9  850 Bonneville
   Las Vegas, Nevada 89101
10 (702) 382-2222 office
   (702) 382-7496 fax
11 email: mposin@gmail.com

12 Attorneys for Petitioners
   STEVEN A. HOLPER and
13 KARA HOLPER

14                    **DISTRICT COURT**

15               **CLARK COUNTY, NEVADA**

16 STEVEN A. HOLPER and                )
   KARA HOLPER,                        )
17                                      )
             Petitioners,              )
18                                      )   CASE NO.: A-13-679950-P
   vs.                                  )   DEPT. NO.:
19                                      )              V I
   ACE AMERICAN INSURANCE              )
20 COMPANY,                            )
                                        )
21           Respondent.               )

22

23 **PETITION FOR DECLARATORY RELIEF, AND OTHER SUPPLEMENTAL RELIEF**

24       COME NOW Petitioners STEVEN A. HOLPER and KARA HOLPER, by and through lead

25 counsel of record, GEORGE R. CARTER, ESQ., of the law firm of GEORGE R. CARTER &

26 ASSOCIATES, in association with MITCHELL L. POSIN, ESQ., of the law firm of MITCHELL

27 POSIN, CHARTERED, and hereby seeks declaratory relief, and other supplemental relief, as follows:

28                         Page 1 of 9

# I.
# PARTIES

1.    That at all times mentioned herein, STEVEN A. HOLPER (hereinafter referred to as "Petitioner STEVEN"), was/is: a) a board certified pain management specialist licensed to practice medicine in the State of Nevada; b) the lawful husband of KARA HOLPER (hereinafter referred to as "Petitioner KARA"); c) a resident of Las Vegas, Clark County, Nevada; and d) residing in the same household with his wife, Petitioner KARA.

2.    That at all times mentioned herein, Petitioner KARA was/is: a) the lawful wife of Petitioner STEVEN; b) a resident of Las Vegas, Clark County, Nevada; and c) residing in the same household with her husband, Petitioner STEVEN.

3.    That at all times mentioned herein, upon information and belief, ACE AMERICAN INSURANCE COMPANY (hereinafter referred to as "Respondent ACE"), was/is: a) a Pennsylvania corporation duly authorized to do business as an insurance carrier by the Nevada State Insurance Commissioner and doing business as such in the State of Nevada; and b) may be served with process by serving the State of Nevada Insurance Commissioner as its registered agent, at 2501 East Sahara Avenue, Room 302, Las Vegas, Nevada 89104.

# II.
# JURISDICTION

4.    This case involves an action for declaratory relief over which this honorable Court has original jurisdiction under NRS 30.010 to 30.160, inclusive, and is commonly referred to as the Uniform Declaratory Judgments Act.

# III.
# THE UNDERLYING CLAIMS

5.    On July 4, 2012, Petitioner STEVEN was severely injured in a boating accident.

6.    The accident occurred on Sandy Beach in Henderson, Clark County, Nevada, when Petitioner KARA accidentally moved the boats gearshift from neutral into reverse, while Petitioner STEVEN was in the lake behind the boat trying to re-secure it to the beach.

///

Page 2 of 9

1        7.     Prior to Petitioner STEVEN getting into the lake, he put the boat's two motors in

2   neutral.

3        8.     Petitioner STEVEN was in the lake because his boat had become dislodged from Sandy

4   Beach where it was tied off, due to a monsoonal storm event which occurred on the lake with winds

5   reaching 50 mph and wave heights reaching six to seven feet.

6        9.     According to National Park Service Rangers who investigated this accident, the force

7   of the propeller in reverse sucked Petitioner STEVEN under the vessel with the vessel's starboard

8   propeller striking both of Petitioner STEVEN's legs below the buttocks as well as striking his scrotum.

9   The impact of the propeller shattered Petitioner STEVEN's left femur causing a large laceration to his

10  left leg and near amputation, and an additional laceration to the right leg also below the buttocks, among

11  other injuries.

12       10.    Petitioner STEVEN's boat is a large Vessel, approximately 42-feet in length.

13       11.    At the time of this accident, the Vessel was insured by Respondent ACE under policy

14  number YKR-Y08598964. See, Yachtsman Policy Declarations Page, attached as Exhibit "1"; see also,

15  Yachtsman/Boatsman Policy, attached as Exhibit "2".

16       12.    On or about September 17, 2012, Petitioner STEVEN made demand upon Respondent

17  ACE, pursuant to the terms of the parties contractual agreement, for bodily injuries he sustained in said

18  boating accident.

19       13.    On or about September 17, 2012, Petitioner KARA also made demand upon Respondent

20  ACE for loss of consortium due to Petitioner STEVEN's severe bodily injuries and disability resulting

21  from the boating accident in question.

22       14.    On or about January 28, 2013, Respondent ACE denied coverage under the policy to

23  Petitioners, stating, in pertinent part, "we respectfully disagree with your interpretation of the policy.

24  We regret being unable to provide service to you at this time." See, Correspondence from Nicole Nava,

25  Casualty Claims Specialist for Respondent ACE, attached as Exhibit "3".

26       15.    From on or about September 17, 2012 until February 25, 2013, Petitioners engaged in

27  negotiations with Respondent ACE in an effort to resolve the coverage issue; all to no avail.

28                             Page 3 of 9

16.     On or about February 25, 2013, Petitioners asked Respondent ACE to join them in seeking declaratory relief from a District Court here in Nevada so as to have the Judge interpret the policy language and determine the applicability of coverage. See, <u>Correspondence from Petitioners' legal counsel addressed to Nicole Nava, Claims Analyst for Respondent ACE</u>, attached as Exhibit **"4"**.

17.     On or about April 3, 2013, Respondent's agent (Nicole Nava) notified Petitioners' legal counsel, via telephone, that it would not participate in a joint petition to have a Judge interpret the policy language and determine the applicability of coverage.

### III.
### <u>JUSTICIABLE CONTROVERSY</u>

18.     The parties have reached an impasse in their negotiations regarding whether coverage should apply to compensate Petitioner STEVEN for the severe bodily injuries he sustained in said boating accident, as well as whether Petitioner KARA is entitled to indemnification, under the terms of the policy.

19.     Petitioner STEVEN is the "Named Insured" under the Yachtsman/Boatsman policy, number YKR Y08598964, issued to him by Respondent ACE. See, <u>Exhibit **"1"**</u>.

20.     Petitioner KARA is a "Covered Person" under the terms of the policy at issue. See, <u>Exhibit **"2"**</u>, page 1, section 3.

21.     The policy definition for a Covered Person reads, in pertinent part, **"Covered Person** is defined as **you**, or any person or legal entity operating the **Insured Vessel** as shown on the Declarations Page with **your** direct and prior permission." See, <u>Exhibit **"2"**</u>, page 1, section 3.

22.     On January 28, 2013, Respondent ACE acknowledged that "Since Kera Holper is related to Dr. Holper by marriage (she is his spouse), and resides in Dr. Holper's household, she is also considered a Covered Person by definition." See, <u>Exhibit **"3"**</u>.

23.     Petitioners contend that because Petitioner KARA was operating the Insured Vessel with Petitioner STEVEN's direct and prior permission, she is a "Covered Person" by policy definition (which Respondent ACE does not dispute); therefore, Petitioner STEVEN is entitled to compensation for the bodily injuries he sustained, under PART B: LIABILITY COVERAGE of the policy. See, <u>Exhibit **"2"**</u>,

1    page 4, section titled "PERILS INSURED AGAINST".

2         24.    This section of the policy (PART B: LIABILITY COVERAGE), specifically provides,

3    in pertinent part, "**We** will pay sums that a **Covered Person** becomes legally obligated to pay as a result

4    of the ownership, operation or maintenance of the **Insured Vessel** because of: **a. Bodily Injury** or loss

5    of life."

6         25.    Respondent ACE contends that Exclusion **a.** under PART B: LIABILITY COVERAGE

7    bars coverage to Petitioner STEVEN; and that said Exclusion also denies indemnification for Petitioner

8    KARA's negligence in causing bodily injury to Petitioner STEVEN.

9         26.    The Exclusion in question reads: "**We** do not provide coverage under PART B:

10   LIABILITY COVERAGE for: **a.** liability of *other* **Covered Persons** to **you** or any **Resident Relative**."

11   See, Exhibit **"2"**, page 4. [Emphasis Added to the word "other"].

12        27.    Respondent ACE attempts to rationalize its decision to deny coverage by defining the

13   word "other", in stating to Petitioners that "The policy clearly and unambiguously excludes coverage

14   for a bodily injury claim asserted by one "Covered Person" against another "Covered Person." See,

15   Exhibit **"3"**, page 4.

16        28.    Petitioners would point out to this honorable Court however, that the policy in question

17   does not contain any definition for the words "other" or "another". See, Policy Agreement and

18   Definitions, pages 1 and 2 of Exhibit **"2"**.

19        29.    Additionally, the word "other" appears a total of thirty-four (34) times throughout the

20   policy. See, Exhibit **"2"**, page 1 (x3); page 2 (x1); page 3 (x4); page 4 (x3); page 5 (x8); page 6 (x0);

21   page 7 (x1); page 8 (x4); page 9 (x4); page 10 (x1); and page 11 (x5).

22        30.    The word "another" appears a total of four (4) times throughout the policy. See, Exhibit

23   **"2"**, page 5 (x1); page 8 (x2); and page 10 (x1).

24        31.    Moreover, Petitioners contend that on each occasion where the policy references or uses

25   the word "other", as noted in paragraph 29 above, the interpretation and meaning of the policy language

26   or provision containing said word "other" is quite clear, but distinctively different from the meaning

27   Respondent ACE now attempts to assign to said word, as referenced in paragraph 27 above.  See,

28                                       Page 5 of 9

1 | Exhibit **"2"**.

2 |       32.     Further, on November 26, 2012, Respondent ACE acknowledged that the word "other"

3 | (as used in the policy and relied exclusively upon by Respondent in denying coverage and

4 | indemnification to Petitioners), is, *"an undefined term in the policy."* See, <u>Correspondence from Nicole</u>

5 | <u>Nava, Claims Analyst for Respondent ACE</u>, attached as Exhibit **"5"**.

6 |       33.     Based upon Petitioners reading of the policy language, it is their ordinary understanding

7 | that the policy's use of the word "other", specifically refers to *"not the same Covered Person or Persons*

8 | *already mentioned or implied in the policy."*

9 | **IV.**<br>**CONTROVERSY RIPE FOR JUDICIAL DETERMINATION**

10 |

11 |       34.     Petitioners repeat and realleges all of the paragraphs and sections referenced above as

though fully set forth herein.

12 |

13 |       35.     On or about January 28, 2013, Respondent ACE informed Petitioners that it would not

provide coverage to them under the policy as Respondent believes the policy language clearly and

14 |

unambiguously excludes coverage for a bodily injury claim asserted by one Covered Person against

15 |

another Covered Person. See, <u>Exhibit **"3"**</u>.

16 |

      36.     Petitioners respectfully disagree with Respondent's interpretation of the policy language,

17 |

and hereby request this Court's interpretation and ruling.

18 |

19 | **V.**<br>**RELIEF SOUGHT**<br>**(Declaratory And Other Supplemental Relief)**

20 |

      37.     Petitioners repeat and realleges all paragraphs referenced above as though fully set forth

21 |

herein.

22 |

**I.**    **Declaratory Relief**:

23 |

      38.     Petitioners believe, and thereon asserts, that Respondent ACE's aforementioned conduct

24 |

establishes all essential elements which warrant the granting of declaratory relief pursuant to Nevada's

25 |

Uniform Declaratory Judgments Act.

26 | ///

27 |

28 | Page 6 of 9

39.     Further, Petitioners believe, and thereon asserts, that Respondent ACE's conduct has, and continues to cause irreparable harm to them and constitutes an overbearing assumption by one of superiority and domination over rights and property of others, particularly these Petitioners.

40.     Therefore, Petitioners respectfully requests that this honorable Court declare:

     a.    That Petitioner STEVEN is the "Named Insured" under the terms of the policy;

     b.    That Petitioner KARA is a "Covered Person" under the terms of the policy;

     c.    That Petitioner KARA is entitled to indemnification under the policy as a Covered Person;

     d.    That Exclusion **a.** under PART B: LIABILITY COVERAGE does not apply to Petitioner KARA as a Covered Person under the policy;

     e.    That Exclusion **a.** under PART B: LIABILITY COVERAGE does not bar coverage to Petitioner STEVEN for bodily injuries he sustained in a boating accident that occurred on or about July 4, 2012;

     f.    That Respondent ACE's conduct [as described throughout this petition] is unreasonable;

     g.    That Respondent ACE's conduct [as described throughout this petition] is deceptive;

     h.    That Respondent ACE's conduct [as described throughout this petition] is misleading;

     i.    That Respondent ACE's conduct [as described throughout this petition] violates the implied covenant of good faith and fair dealing owed to the Petitioners.

41.     Continuing, Petitioners believe, and thereon assert, that there are genuine issue(s) in dispute regarding Respondent ACE's legal obligations under the parties' contractual policy agreement; therefore, this Court can declare the parties' rights, status and other legal relations, whether or not further relief is or could be claimed. And, any relief which will terminate the controversy or remove uncertainty may be granted. NRS 30.030; see also, *Woods v. Bromley*, 69 Nev. 96, 241 P.2d 1103 (1952).

**II.     Supplemental Relief (*Reasonable Attorney's Fees*):**

42.     Petitioners repeat and realleges all paragraphs referenced above as though fully set forth herein.

///

///

43. On February 25, 2013, Petitioners made reasonable request upon Respondent ACE to join them in a "joint" petition for declaratory relief in order to have a district court decide the issue(s) in dispute. See, Exhibit "4".

44. On or about April 3, 2013, Respondent ACE notified Petitioners' legal counsel that it would not participate in a joint petition for declaratory relief.

45. Thus, Petitioners had to retain the services of an attorney to prosecute this matter and is therefore entitled to reasonable attorney's fees.

**III.   Supplemental Relief** (Costs):

46. Petitioners repeat and realleges all paragraphs referenced above as though fully set forth herein.

47. Pursuant to NRS 30.120, Petitioners respectfully request that this honorable Court make an award of costs that are equitable and just.

**VI.**
**DEMAND FOR TRIAL BY JURY**

48. Petitioners hereby demand trial by jury on all issues so triable.

49. Petitioners reserve their right to amend this petition to include any causes of action against Respondent for breach of contract, violation of Nevada's unfair claim practices act, violation of Nevada's deceptive trade practices act, breach of the covenant of good faith and fair dealing.

50. Petitioners reserve their right to amend this petition to include any other person(s) or entities not named herein should this honorable Court deem it appropriate or necessary.

WHEREFORE, Petitioners expressly reserve their right to amend this Petition to include all justiciable controversies and/or causes of action not yet ascertained, prays judgment against Respondent, as follows:

1. For a declaration of the rights, status, and other legal relations attendant to the parties' contractual policy agreement;

2. Reasonable attorney's fees and costs incurred, including such fees and costs associated herein;

1    3.    For such other and further relief as this honorable Court may deem just and proper.

2    DATED this _10TH_ day of April, 2013.

3                                        Respectfully submitted,

4                                        **LAW OFFICES OF**
                                         **GEORGE R. CARTER & ASSOCIATES**

5

6                                        by: _George R. Carter_

7                                        George R. Carter, Esq.
                                         Nevada Bar No. 000169
8                                        1050 East Sahara Avenue, Suite 301
                                         Las Vegas, Nevada 89104
9                                        (702) 384-8951
                                              Lead Counsel for Petitioners
10                                            STEVEN and KARA HOLPER

///

11   ///

12   ///

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27

28                          Page 9 of 9

# DISTRICT COURT
## CLARK COUNTY, NEVADA

STEVEN A. HOLPER, and KARA HOLPER,  )
                                       )    CASE NO.:
                                       )    DEPT. NO.:
            Petitioners,        )
                                       )
vs.                                 )
                                     )
ACE AMERICAN INSURANCE COMPANY,   )
                                     )
                                     )
            Respondent.        )
_____ )

## INITIAL APPEARANCE FEE DISCLOSURE
## (NRS CHAPTER 19)

Pursuant to NRS Chapter 19, as amended by Senate Bill 106, filing fees are submitted

for parties appearing in the above entitled action as indicated below:

      Name of Petitioner: Steven A. Holper               $270.00
      Name of Petitioner: Kara Holper                  $ 30.00

      TOTAL REMITTED:                       $300.00

DATED this 10th day of _APRIL_____, 2013.

_George R. Carter_ (Signature)

                           Name:           George R. Carter, Esq.
                                           Nevada Bar No. 000169
                         Address:       1050 E. Sahara Ave., # 301
                         City/State/Zip:  Las Vegas, Nevada 89104
                         Telephone:     (702) 384-8951
                         Attorney for:   Petitioners

Steven H. Holper, et al.

v.

ACE American Ins. Co.

Ex. "1"

# *Yachtsman*
# *Policy*



ace recreational
marine insurance

**Policy Number: YKR   Y08598964**

RENEWAL
Agency Code, Name & Address
272538
GLOBAL MARINE INSURANCE AGENCY INC
12935 S WEST BAYSHORE DRIVE
SUITE 205
TRAVERSE CITY, MI 49684

This is your **Yachtsman** Policy's Declarations Page. Please read carefully. It gives you important facts about your coverage.

The Company Providing This Insurance

ACE AMERICAN INSURANCE COMPANY
436 Walnut Street, P.O. Box 1000
Phila, PA 19106-3703

The Named Insured Under This Policy:                                          (NAME)

Steven A Holper

Address:                             3233 W Charleston
                                     Ste 202
                                     Las Vegas, NV 89102

The Vessel Covered By This Policy                              (NAME)

                                     'On Call II'

| (YEAR BUILT) | (LENGTH) | (MAKE) | (MODEL) | (DOC. OR HULL. IDENT. NO) |
|---|---|---|---|---|
| 1990 | 42' | CRUISERS | 4280 Express | CRS8882BK990 |

This policy will take effect on   5/21/2012          5/21/2013

It will begin and end at 12:01 A.M. standard time, at the place where this policy was issued.
In return for the "Total Premium," listed below, we agree to provide the insurance coverages for which a premium is shown in the chart below.

| PARTS | COVERAGE PROVIDED — COVERAGES | AMOUNT OF INSURANCE | DEDUCTIBLE AMOUNT | PREMIUM |
|---|---|---|---|---|
| A | Property Damage | $    195,000 | $         3,900 | $    1,878 |
|  | Windstorm Deductible |  | $  Not Applicable | $        0 |
|  | Commercial Towing & Assistance | $      1,500 | $          0 | $        0 |
| B | Liability Coverage | $    500,000 | $          0 | $      249 |
| C | Medical Payments | $     25,000 | $          0 | $        0 |
| D | Uninsured Boater | $    500,000 | $          0 | $        0 |
| E | L&HCA | $ Statutory Limits | $ | $(included in "B" if any) |
| F | Trailer | $   Not Covered | $ | $ |
| G | Personal Property | $     10,000 | $        250 | $        0 |
|  | Premium Bearing Endt(s): See Attached Endorsements |  |  | $        0 |

**TOTAL PREMIUM**        $    2,127

**LIMITS ON USE:**    See Navigation Warranty   MA-7W84
**ENDORSEMENTS:** ALL21101 MA-14558b MA-1X09f MA-1X16 MA-2W79c MA-3Z58a MA-4656b MA-7W84c

**Lay-up Warranty** ——— It is warranted the vessel will be laid up for part of the year, the dates are:
            From noon:                                    To noon:
**LOSS PAYEE:**    We will make payments for Part A: Property Damage losses to the Assured and

MA-7N39k (07/11)                         INSURED COPY

## ADDITIONAL INSURED ENDORSEMENT

| Named Insured  Steven A Holper | | | Endorsement Number Vessel 1 |
|---|---|---|---|
| Policy Symbol YKR | Policy Number Y08598964 | Policy Period 5/21/2012 TO 5/21/2013 | Effective Date of Endorsement 5/21/2012 |
| Issued By (Name of Insurance Company) ACE AMERICAN INSURANCE COMPANY | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

In consideration of the premium charged, it is hereby agreed that

Callville Bay Resort Marina

HC-30

Box 100

Las Vegas, NV 89124

is an additional insured on this policy, but only as their interest may appear in the vessel described herein and for the liability arising out of the negligence of the insured, as defined in the policy. It is further agreed that the additional insured is named as such for the purpose of bodily injury and property damage liability in connection with the insured's ownership, maintenance and operation of the vessel covered by this policy.

By issuance of this endorsement, the company does not waive its right of subrogation. The coverage afforded by this endorsement shall arise out of liability that rests solely with the insured. In the event of non-renewal or cancellation of this policy, the additional insured shown above shall receive fifteen (15) days written notice prior to any such termination from the company.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Authorized Agent

MA-1X16 (8/98) Ptd. in U.S.A.

STEVEN A. Holper, et al.

v.

ACE AMERICAN Ins. Co.

Ex. "2"

# YACHTSMAN® / BOATSMAN® POLICY
## QUICK REFERENCE

**AGREEMENT AND DEFINITIONS**
- Insuring Agreement ............................................. 1
- Definitions ........................................................ 1

**PART A: PROPERTY DAMAGE COVERAGE**
- Perils Insured Against.......................................... 2
- Valuation ........................................................... 2
- Exclusions .......................................................... 2
- Equipment on Shore.............................................. 3
- Deductible Amount ............................................... 3
- Loss Settlement .................................................. 3
- Property Subject to Depreciation........................... 3
- Commercial Towing and Assistance ........................ 3

**ADDITIONAL PROPERTY COVERAGE**
- Protection Against Loss and Salvage ...................... 3
- Overland Transport.............................................. 4
- Unscheduled Dinghy/Tender Coverage .................... 4
- Hurricane Haulout Coverage ................................. 4

**PART B: LIABILITY COVERAGE**
- Perils Insured Against.......................................... 4
- Exclusions .......................................................... 4
- Limits of Liability ................................................ 4
- Operating Other Vessels ...................................... 5
- Marina As Additional Insured ................................ 5
- Marine Environmental Damage Coverage................ 5
- Search & Rescue/Emergency Services Coverage..... 5

**PART C: MEDICAL PAYMENTS COVERAGE**
- Perils Insured Against.......................................... 5
- Exclusions .......................................................... 5
- Loss Settlement .................................................. 5
- Medical Payments Proof-of-Loss ........................... 5
- Additional Requirements ...................................... 6
- Admission of Liability ........................................... 6

**PART D: UNINSURED BOATER COVERAGE**
- Perils Insured Against.......................................... 6
- Exclusions .......................................................... 6
- Loss Settlement .................................................. 6

**PART E:
FEDERAL LONGSHOREMEN'S
AND HARBOR WORKERS'
INSURANCE** ........................................................ 6

**PART F: VESSEL TRAILER COVERAGE**
- Perils Insured Against.......................................... 6
- Exclusions .......................................................... 6

- Deductible Amount .............................................. 6
- Loss Settlement .................................................. 6

**PART G: PERSONAL PROPERTY COVERAGE**
- Perils Insured Against .......................................... 7
- Exclusions .......................................................... 7
- Mysterious Disappearance And/Or Theft................. 7
- Deductible Amount .............................................. 7
- Loss Settlement .................................................. 7

**GENERAL CONDITIONS AND EXCLUSIONS**
- Boat Show And Demonstration............................... 7
- Broadening Coverage ........................................... 7
- Changes In Policy ................................................ 7
- Choice of Law / Conformity to State Law................ 7
- Policy Period....................................................... 7
- Policy Premium and Renewal................................. 7
- Cancelling the Policy ........................................... 8
- Return Premiums ................................................ 8
- Assisting Others In Distress.................................. 8
- Towing Exclusion ................................................ 8
- Private Pleasure Use Only ................................... 8
- Limits On Use ..................................................... 8
- Lay-up Warranty ................................................. 8
- War, Confiscation and Contamination..................... 8
- Terrorism Exclusion ............................................ 8
- Concealment, Misrepresentation or Fraud............... 9
- Dishonest, Illegal or Intentional Acts...................... 9
- No Benefits to Others .......................................... 9
- Transfer of Interest.............................................. 9

**GENERAL PROVISIONS IN THE
EVENT OF LOSS**
- Assistance and Cooperation.................................. 9
- Claim or Suit Against A Covered Person ................. 9
- Suit Against Us ................................................... 9
- Arbitration .......................................................... 9
- Notice of Loss..................................................... 10
- Proof-of-Loss ..................................................... 10
- Payment of Loss ................................................. 10
- Our Right to Recover ........................................... 10
- Right to Salvage ................................................. 10
- Abandonment...................................................... 11
- Other Insurance .................................................. 11

**TRADE OR ECONOMIC SANCTIONS**.................... 11

**SIGNATURES** ...................................................... 11



# YACHTSMAN® / BOATSMAN® POLICY

## AGREEMENT AND DEFINITIONS

**INSURING AGREEMENT:** This is a legally binding insurance contract between **you** and **us**, incorporating in full the information and representations contained upon the application form signed by **you**. **We** will provide the insurance coverage described in this policy, in return for payment to **us** of the premium due and compliance by **Covered Persons** with the provisions, conditions and warranties of this policy.

**DEFINITIONS:** Throughout this policy, **you** and **your** refer to the **named insured** as shown in the Declarations Page and **we, us** and **our** refer to the company providing this insurance. In addition, certain words and phrases are defined as follows:

1. **Bodily Injury** means physical bodily injury, sickness or disease arising from an **Occurrence** sustained by a person, including death resulting from any of these.

2. **Constructive Total Loss** means a loss in which the cost of recovering and/or repairing the **Insured Vessel** is greater than the PART A: PROPERTY DAMAGE AMOUNT OF INSURANCE as shown on the Declarations Page.

3. **Covered Person** is defined as **you**, or any person or legal entity operating the **Insured Vessel** as shown on the Declarations Page with **your** direct and prior permission. It does not include any person or legal entity operating the **Insured Vessel** and acting in the capacity of employee or agent of a marina, repair yard, yacht club, sales agency, boat service station, towing or salvage entity or other similar organization. However, **we** will cover non-contractual liability of a **Covered Person** for **Bodily Injury** or **Property Damage** caused by any of these persons or organizations.

4. **Dinghy/Tender** is defined as a small vessel including any associated propulsion unit owned by **you**, capable of being carried aboard the **Insured Vessel** and used in conjunction with the **Insured Vessel** but does not meet the definition of **Personal Watercraft**.

5. **Fungi** means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by **Fungi**.

6. **Horsepower** is defined as that amount stated by the manufacturer as peak-developed **Horsepower** as measured at the flywheel.

7. **Insured Vessel** is defined as the vessel(s) shown on the Declarations Page including:
   a. Furniture, spars, sails, machinery, fittings and other equipment normally required for the operation, navigation or maintenance of the **Insured Vessel**;
   b. **Dinghy/Tenders**;
   c. Any vessel in which **you** acquire ownership of during the Policy Period and:
      i. has a maximum designed speed no greater than seventy (70) miles per hour;
      ii. has length no more than ten (10) feet greater than the length of the **Insured Vessel**;
      iii. has a purchase price no more than 20% greater than the **Insured Vessel**; and
      iv. is not a **Personal Watercraft**; however,
         1. **you** must notify **us** within thirty (30) days of the time **you** acquire the vessel and pay any additional premium required. Failure to provide **us** with the required notice shall result in no coverage under the policy for the acquired vessel;
         2. In the event **we** have not been notified and a loss is sustained within thirty (30) days of the time **you** acquire the vessel, **we** will pay no more than its cost to **you** or the PART A: PROPERTY DAMAGE AMOUNT OF INSURANCE, whichever is less, subject to a deductible of 2% percent of the amount **you** paid for the acquired vessel.

   **Insured Vessel** does not include moorings, cradles, aircraft, submersible and semi-submersible watercraft, or motorized vehicles for land conveyance.

8. **Latent Defect** is a hidden flaw in the material of a component part of the **Insured Vessel** existing at the time of the building of the component part which is not discoverable by visual observation or common or ordinary methods of testing at the time the component part was manufactured.

9. **Lay-up** is defined as taking your yacht out of active service and decommissioning it for the period of time as shown on the Declarations Page. **Lay-up** can include either storage on land or afloat, also as shown on the Declarations Page.

10. **Navigation and Communication Equipment** means permanent systems on board the **Insured Vessel** that enable the **Insured Vessel** to navigate safely or communicate with other vessels or persons.



11. **Occurrence** means a loss or accident to which this insurance applies and which takes place within the policy period appearing upon the Declarations Page of this policy.

12. **Personal Property** is defined as clothing, personal effects, fishing gear and equipment, sports equipment, personal electronics and computer hardware that belong to **you, Resident Relatives, or your** guests, while these items are on board or are being loaded on to or unloaded from the **Insured Vessel. Personal Property** does not include money, jewelry, furs, traveler's checks or any other valuable papers or documents. **Personal Property** does not include any items or equipment contained within the definition of **Insured Vessel.**

13. **Personal Watercraft** is defined as a vessel powered by internal water jet propulsion, less than thirteen (13) feet in length which the operator sits upon or stands astride and is commonly referred to as a wave runner or jet ski.

14. **Property Damage** means accidental, direct physical loss or damage to tangible property arising from an **Occurrence.** Tangible property does not include money, stocks, bonds, deeds, mortgages, or other instruments of a similar nature.

15. **Pollution** means **Property Damage,** clean up costs or containment expenses imposed by any federal, state, or local statute or regulation or reasonably incurred by **you** arising out of the sudden and accidental discharge, spillage, leakage or emission of waste, oil, fuel, petroleum or chemical products.

16. **Resident Relative** means a person who at the time of an **Occurrence** is related by blood, marriage, civil union or adoption to the **named insured,** spouse or domestic partner, and who resides in the **named insured's** household, even if temporarily living somewhere else. **Resident Relative** includes any ward or foster child who usually resides within the named **insured's** household.

17. **Total Loss** means the **Insured Vessel** shown on the Declarations Page is completely lost or destroyed.

18. **Tropical Depressions, Tropical Storms and Hurricanes** are defined as those so designated by the National Weather Service and/or the National Hurricane Center.

19. **Uninsured Boater and Uninsured Owner-Operator** means any owner or operator of a vessel, other than an **Insured Vessel** covered by this policy, who is legally responsible for an **Occurrence** and:
    a. to whom no liability policy affords coverage; or
    b. who cannot be identified, such as a hit-and-run operator.

## PART A: PROPERTY DAMAGE COVERAGE

**PERILS INSURED AGAINST: We** will pay for **Property Damage** to the **Insured Vessel** caused by an **Occurrence** as well as Protection Against Loss and Salvage charges, except as excluded in this policy or by endorsement.

**VALUATION:** The amount shown on the Declarations Page or endorsements of this policy for PART A: PROPERTY DAMAGE COVERAGE represents the agreed value of the **Insured Vessel.** This is the maximum amount we will pay in the event of a covered loss for **Property Damage** to the **Insured Vessel.**

**EXCLUSIONS:** We do not provide coverage under PART A: PROPERTY DAMAGE COVERAGE for any loss or resulting damage from:
    a. wear and tear, gradual deterioration, weathering, neglect, lack of reasonable care or due diligence in the maintenance of the **Insured Vessel;**
    b. insects, animals or marine life; however **Property Damage** coverage is provided for:
        i. engines, generators, or pumps due to the attachment of zebra mussels;
        ii. collision with marine mammals;
        iii. muskrats or sea lions when their actions result in the sinking or submersion of the **Insured Vessel;**
    c. marring, scratching or denting;
    d. osmosis or blistering;
    e. manufacturing defect(s) or manufacturer's defect(s) in design;
    f. a **Latent Defect;** however, resulting damage caused by a **Latent Defect** is covered;
    g. corrosion, except electrolytic (stray current) corrosion;
    h. transportation onboard a cargo vessel or during loading or unloading, excepting a passenger/car ferry used as a means of conveyance while the **Insured Vessel** is upon a trailer owned by you;
    i. **Fungi,** bacteria and the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of **Fungi** or bacteria.

**EQUIPMENT ON SHORE: We** will provide coverage for all equipment contained in the definition of **Insured Vessel** that is removed temporarily from the **Insured Vessel** for storage on shore. The amount of insurance applicable to the **Insured Vessel** will be reduced by the amount covered on shore.

**DEDUCTIBLE AMOUNT:**

    a.  We will adjust each claim separately for a covered loss to the **Insured Vessel**. The Deductible Amount shown on the Declarations Page will be deducted from the claim payment. For deductible purposes, we will treat two (2) or more covered losses resulting from the same **Occurrence** as one (1) claim. No deductible will be applied in the event of a **Total Loss or Constructive Total Loss** to the **Insured Vessel**, except for conditions outlined in paragraph b below;

    b.  if a Windstorm Deductible Amount is shown on the Declarations Page or by endorsement, **we** will apply that deductible to covered losses caused by wind, rain, water, wave or hail when those losses are the result of either a **Tropical Depression, Tropical Storm or Hurricane**. This deductible will be in lieu of the PART A: PROPERTY DAMAGE COVERAGE DEDUCTIBLE AMOUNT shown on the Declarations Page or by endorsement and will be applied to the amount of each loss. It will be applicable to all partial, **Total Losses or Constructive Total Losses.**

**LOSS SETTLEMENT:** In the event of loss or damage to the **Insured Vessel**, we will pay the lowest of the following amounts:

    a.  the cost of repair; or

    b.  the cost of replacement with no deduction for depreciation, except as specified in the Property Subject to Depreciation provision of this coverage part; or

    c.  the PART A: PROPERTY DAMAGE COVERAGE AMOUNT OF INSURANCE as shown on the Declarations Page.

We have the option to repair damages to metal, wood, plastic, fiberglass or other molded material of the **Insured Vessel**:

    a.  in accordance with customary boatyard repair practices, including the reasonable cost of suitable patches to the damaged area; or

    b.  in accordance with repair procedures recommended by the builder or manufacturer.

The amount we will pay for a **Total Loss or Constructive Total Loss** shall be reduced by the amount paid for repairs of prior covered damage not completed at the time of the **Total Loss or Constructive Total Loss.**

**PROPERTY SUBJECT TO DEPRECIATION:** In the event of **Property Damage** to your **Insured Vessel's** sails, dodgers, protective coverings inclusive of all-weather bridge and cockpit enclosures, carpeting, upholstery, cushions, fabrics, outboard motors or outdrive units, machinery inside the **Insured Vessel** which is over seven (7) years old, or components of any of the preceding items which requires replacement or repair, we will pay the lesser of:

    a.  the cost to repair;

    b.  the cost of replacement; or

    c.  the actual cash value at the time of loss, which is defined herein as replacement cost less depreciation.

However, with respect to the items specified above, in no event shall the depreciated value be less than 20% of the replacement cost of that item.

**COMMERCIAL TOWING AND ASSISTANCE COVERAGE: We** will reimburse you for the reasonable costs you incur resulting from the following services to the **Insured Vessel** or boat trailer covered by this policy if voluntary help is not available and you must obtain commercial assistance:

    a.  towing to the nearest place where necessary repairs can be made;

    b.  delivery of fuel, oil, parts or loaned battery (excluding the cost of these items themselves);

    c.  emergency labor at the site of disablement.

The amount we reimburse you shall not exceed the Commercial Towing and Assistance Amount of Insurance shown on the Declarations Page. The Commercial Towing and Assistance Coverage provided herein shall be excess over all other valid or collectible towing assistance benefits applicable to the **Insured Vessel** or boat trailer. To the extent this provision conflicts with the Other Insurance provision under GENERAL PROVISIONS IN THE EVENT OF LOSS, the language herein shall apply to this Commercial Towing and Assistance Coverage. The Commercial Towing and Assistance Coverage provided herein is not subject to a deductible.

**ADDITIONAL PROPERTY COVERAGE:**

**PROTECTION AGAINST LOSS and SALVAGE:** It shall be **your** responsibility to use all lawful and reasonable means to recover or protect the **Insured Vessel** from further loss or damage. **We** will pay the reasonable cost of such protection in addition to any other payments for loss under PART A: PROPERTY DAMAGE COVERAGE of this policy. The amount payable under this provision shall not exceed the amount of insurance applicable to PART A: PROPERTY DAMAGE COVERAGE as shown on the Declarations Page, nor

MA-14558b (04/10)

reduce that limit. All coverage provided under this Protection Against Loss and Salvage provision will terminate immediately after payment by **us** of a **Total Loss** or **Constructive Total Loss**. The PART A: PROPERTY DAMAGE COVERAGE Deductible Amount does not apply to Protection Against Loss and Salvage.

**OVERLAND TRANSPORT:** **We** will provide coverage while **your Insured Vessel** is being transported overland, including loading and unloading, provided the distance from beginning to end of the overland transport is 250 miles or less. Distances greater than 250 miles require **our** prior written permission unless the means of conveyance is a trailer owned by **you**.

**UNSCHEDULED DINGHY/TENDER COVERAGE:** Subject to the PART A: PROPERTY DAMAGE COVERAGE EXCLUSIONS, **we** will pay for **Property Damage** to **your** unscheduled **Dinghy/Tender**, provided the overall length shall not exceed 17' in length and the propulsion unit maintains a total maximum **Horsepower** of forty (40) **Horsepower** or less. Covered losses to any unscheduled **Dinghy/Tender** (including propulsion unit) shall be subject to a $250.00 deductible per **Occurrence**. The most **we** will pay for any unscheduled **Dinghy/Tender** and/or propulsion unit is their actual cash value, which is defined herein as replacement cost less depreciation. Should a covered loss to both the unscheduled **Dinghy/Tender** and the **Insured Vessel** exceed the PART A: PROPERTY DAMAGE COVERAGE DEDUCTIBLE AMOUNT, the $250.00 deductible applicable to the unscheduled **Dinghy/Tender** shall not apply.

**HURRICANE HAULOUT COVERAGE:** If the National Weather Service issues a **Tropical Depression, Tropical Storm** or **Hurricane** watch or warning for the area where the **Insured Vessel** is located, **we** will share equally (50%) with **you** for the reasonable expenses **you** incur to:
   a. have the **Insured Vessel** hauled out of the water, stored until the watch or warning has ended and then launched in the same general area; or
   b. have the **Insured Vessel** moved to a safe harbor, including any docking or /mooring fees.
Expenses for the acquisition of lines, anchors and additional equipment to secure the **Insured Vessel** are not included in this coverage. The most **we** will pay for any one **Tropical Depression, Tropical Storm or Hurricane** is $1,000 per occurrence and for any one policy period is $2,000 regardless of the total number of **Tropical Depressions, Tropical Storms or Hurricanes**. The PART A: PROPERTY DAMAGE COVERAGE DEDUCTIBLE AMOUNT does not apply to this coverage.

## PART B: LIABILITY COVERAGE

**PERILS INSURED AGAINST:** **We** will pay sums that a **Covered Person** becomes legally obligated to pay as a result of the ownership, operation or maintenance of the **Insured Vessel** because of:
   a. **Bodily Injury** or loss of life;
   b. **Property Damage;**
   c. Pollution;— *smt +Fed limit is available*
   d. attempted or actual raising, removal or destruction of the wreck of the **Insured Vessel**;
   e. failure to raise, remove or destroy the wreck of the **Insured Vessel**;
   f. liability to paid crew as defined in the Jones Act or under General Maritime Law.

**EXCLUSIONS:** **We** do not provide coverage under PART B: LIABILITY COVERAGE for:
   a. liability of other **Covered Persons** to **you** or any **Resident Relative**;
   b. **your** liability to any **Resident Relative**;
   c. liability assumed by a **Covered Person** under any contract or agreement;
   d. fines or other penalties that any government unit requires **you** to pay other than as provided by MARINE ENVIRONMENTAL DAMAGE COVERAGE below;
   e. punitive damages; and
   f. liability arising from the use of motorized vehicles for land conveyance, aircraft, submersible and semi-submersible watercraft.

**LIMITS OF LIABILITY:** **We** will pay no more than the PART B: LIABILITY COVERAGE AMOUNT OF INSURANCE shown on the Declarations Page arising out of any one (1) **Occurrence**, regardless of the number of **Covered Persons** involved, claims made or suits brought; or persons or organizations making claims or bringing suits.

In addition, with respect to **Pollution**, **we** will pay up to the amount necessary to satisfy **your** statutory limit (with respect to pollution liability) as specified in the Oil Pollution Act of 1990 (and any subsequent amendments). This is in addition to the PART B: LIABILITY COVERAGE AMOUNT OF INSURANCE. However, nothing herein shall serve as or otherwise certify that this policy is evidence of the maintenance of any financial guarantee or obligation required by law, statute or otherwise.

MA-14558b (04/10)                                                                 Page 4 of 11

**OPERATING OTHER VESSELS:** The PART B: LIABILITY COVERAGE AMOUNT OF INSURANCE includes operating another vessel with the permission of its owner. If there is any other insurance against a loss covered by this provision, we will provide coverage only as excess over such other insurance. To the extent this provision conflicts with the Other Insurance provision under GENERAL PROVISIONS IN THE EVENT OF LOSS, the language herein shall apply to this Operating Other Vessels clause. **We** do not provide any coverage while **you** operate other vessels if:

    a.  the vessel is owned wholly or in part by **you**; or
    b.  the vessel is being used for purposes other than private pleasure use; or
    c.  the vessel is furnished for **your** regular use; or
    d.  the vessel length exceeds that of the **Insured Vessel** by at least ten (10) feet; or
    e.  the vessel is designed for, or capable of, speeds in excess of seventy (70) miles per hour; or
    f.  the vessel is a **Personal Watercraft**, excepting **Personal Watercraft** scheduled to this policy by endorsement.

**MARINA AS ADDITIONAL INSURED:** The yacht club, marina or other similar facility where the **Insured Vessel**(s) is kept is added as an additional insured on this policy, but only as their interest may appear in the **Insured Vessel** and for the liability arising out of the negligence of the **Named Insured**, as defined in the policy. The additional insured is named as such for the purpose of **Bodily Injury** and **Property Damage** liability in connection with the **Named Insured's** ownership, maintenance and operation of the **Insured Vessel** covered by this policy.

**MARINE ENVIRONMENTAL DAMAGE COVERAGE:** **We** will pay up to $10,000 per **Occurrence** for those fines or other penalties levied or assessed by a governmental unit, resulting from physical injury, alteration or destruction of coastal or marine habitat arising from physical contact with the **Insured Vessel**. Any payment hereunder shall in addition to the PART B: LIABILITY COVERAGE AMOUNT OF INSURANCE.

**SEARCH & RESCUE / EMERGENCY SERVICES COVERAGE:** **We** will pay up to $10,000 per **Occurrence** for the reasonable expenses **you** incur from a governmental unit for any search and rescue operation in the event any person is lost at sea from the **Insured Vessel** and for emergency aid or assistance to the **Insured Vessel**. Any payment hereunder shall be in addition to the PART B: LIABILITY COVERAGE AMOUNT OF INSURANCE.

# PART C:  MEDICAL PAYMENTS COVERAGE

**PERILS INSURED AGAINST:** **We** will pay for reasonable medical, ambulance, hospital, professional nursing and funeral costs that become necessary due to **Bodily Injury** to persons injured while in, upon, boarding, leaving or towed behind the **Insured Vessel**. **We** will pay only for those costs incurred within three (3) years of the date of the **Occurrence** giving rise to coverage hereunder.

**EXCLUSIONS: We** do not provide coverage under PART C: MEDICAL PAYMENTS COVERAGE for:

    a.  employee(s) of a **Covered Person** who is injured while in the course of employment or while using, maintaining or repairing the **Insured Vessel**;
    b.  any obligation or payment assumed by a **Covered Person** under contract or agreement;
    c.  anyone who is injured while the **Insured Vessel** is being conveyed, however coverage is afforded while the **Insured Vessel** is being hauled or launched via a trailer owned by **you**;
    d.  anyone to or for whom benefits are payable under any state or federal remedy, law, statute or compensation law or act.

**LOSS SETTLEMENT: We** will pay no more than the amount of insurance shown for PART C: MEDICAL PAYMENTS COVERAGE on the Declarations Page for all covered costs of each person injured as a result of any **Occurrence**.

**MEDICAL PAYMENTS PROOF-OF-LOSS:** A written, sworn proof-of-loss must be filed with **us** by any person seeking payment by **us** under PART C: MEDICAL PAYMENTS COVERAGE, or by someone on their behalf. This proof-of-loss must include:

    a.  the name and address of each person and organization performing covered services;
    b.  the nature, extent and dates of these services; and
    c.  itemized charges and any sums already paid.

This proof-of-loss must be filed:

    a.  as soon as reasonably possible after completion of services;
    b.  as soon as reasonably possible after the cost of services being provided equals or exceeds the amount of our liability under PART C: MEDICAL PAYMENTS COVERAGE on the Declarations Page;
    c.  within one (1) year of the date of the **Occurrence**;

whichever of the above occurs first.

**ADDITIONAL REQUIREMENTS:** Each person seeking payment by **us** under PART C: MEDICAL PAYMENTS COVERAGE must:

    a.  submit to physical examinations by physicians selected by **us** when and as often as we reasonably require; **we** will pay for the cost of the examinations; and

    b.  provide **us** with written authorization for release to **us** of copies of pertinent medical reports and records.

**ADMISSION OF LIABILITY:** Any payment made under PART C: MEDICAL PAYMENTS COVERAGE is not an admission of liability by a **Covered Person** or **us**.

## PART D: UNINSURED BOATER COVERAGE

**PERILS INSURED AGAINST:** We will pay **Bodily Injury** received on board the **Insured Vessel**, which a **Covered Person** is legally entitled to recover from an **Uninsured Boater and Uninsured Owner-Operator**.

**EXCLUSIONS:** We do not provide coverage under PART D: UNINSURED BOATER COVERAGE:

    a.  for claims settled without **our** written consent;

    b.  if the uninsured vessel is owned by a government agency or unit;

    c.  for vessels owned by **you** or furnished for **your** regular use, or the use of a **Resident Relative** or any **Covered Person**;

    d.  where no evidence of physical contact exists between the **Insured Vessel** and an uninsured or unidentified vessel.

**LOSS SETTLEMENT:** The amount shown for PART D: UNINSURED BOATER COVERAGE on the Declarations Page is the most we will pay under PART D, regardless of the number of **Covered Persons**, claims made or vessels involved in any **Occurrence**. This coverage will not apply directly or indirectly to the benefit of any **Covered Person** under any state or federal compensation law or act. Payment made for this coverage to or for a **Covered Person** will reduce the amount that person is entitled to recover from the PART B: LIABILITY COVERAGE and PART C: MEDICAL PAYMENTS COVERAGE of this policy.

## PART E: FEDERAL LONGSHORE & HARBOR WORKERS' COMPENSATION INSURANCE

When insurance is provided under PART B: LIABILITY COVERAGE, we will also provide coverage under this part. We will provide coverage for liability arising from an **Occurrence** which you, as owner of the **Insured Vessel**, incur because of an obligation under §904 of The Longshore & Harbor Workers' Compensation Act, 33 U.S.C.§§901-950, as amended.

## PART F: VESSEL TRAILER COVERAGE

**PERILS INSURED AGAINST:** We will pay for **Property Damage** to any trailer listed on the Declarations Page arising from an **Occurrence**, except as excluded in this policy or by endorsement.

**EXCLUSIONS:** We do not provide coverage under PART F: VESSEL TRAILER COVERAGE for any loss or resulting damage from:

    a.  wear and tear, gradual deterioration, weathering, neglect, lack of reasonable care or due diligence in the maintenance of the trailer listed on the Declarations Page;

    b.  marring, scratching or denting;

    c.  manufacturing defects or a manufacturer's defects in design;

    d.  a **Latent Defect**; however, resulting damage caused by a **Latent Defect** is covered;

    e.  corrosion.

**DEDUCTIBLE AMOUNT:** We will adjust each claim separately for a covered loss for PART F: VESSEL TRAILER COVERAGE. The Deductible Amount shown on the Declarations Page will be deducted from the claim payment. For deductible purposes, we will treat two (2) or more covered losses resulting from the same **Occurrence** as one (1) claim.

**LOSS SETTLEMENT:** In the event of loss or damage to the vessel trailer, we will pay the lowest of the following amounts:

    a.  the cost to repair; or

    b.  the cost of replacement subject to depreciation; or

    c.  the PART F: VESSEL TRAILER COVERAGE AMOUNT OF INSURANCE as shown on the Declarations Page.

From the replacement cost of tires we will deduct 20% for each year or part of a year of age.

# PART G: PERSONAL PROPERTY COVERAGE

**PERILS INSURED AGAINST:** We will provide coverage for direct physical loss or damage to **Personal Property**, arising from an **Occurrence**, except as specifically excluded in this policy.

**EXCLUSIONS:** We do not provide coverage under PART G: PERSONAL PROPERTY COVERAGE against loss or resulting damage from:

    a.  wear and tear, mechanical breakdown, gradual deterioration, weathering, insects, mold, animals, marine life, ice, freezing or extremes of temperature;

    b.  marring, scratching or denting;

    c.  osmosis, blistering, corrosion, except electrolytic (stray current) corrosion; or

    d.  manufacturing defects or manufacturer's defects in design.

**MYSTERIOUS DISAPPEARANCE AND/OR THEFT:** Any coverage provided under PART G: PERSONAL PROPERTY COVERAGE shall not apply to the mysterious disappearance and/or theft of any covered **Personal Property**, unless said **Personal Property** is locked in a secure place and;

    a.  there is documented and visible evidence of forcible entry into the cabin of the **Insured Vessel**; or

    b.  there is documented and visible evidence of the forcible removal of covered **Personal Property** from the **Insured Vessel**; or

    c.  there is a theft of the entire **Insured Vessel**.

**DEDUCTIBLE AMOUNT:** We will adjust each claim separately for a covered loss to your **Personal Property**. The Deductible Amount shown on the Declarations Page will be deducted from the claim payment. For deductible purposes, we will treat two (2) or more covered losses resulting from the same **Occurrence** as one (1) claim.

**LOSS SETTLEMENT:** In the event of loss or damage to your **Personal Property**, we will pay the lowest of the following amounts:

    a.  the cost to repair;

    b.  the cost of replacement subject to depreciation; or

    c.  the PART G: PERSONAL PROPERTY COVERAGE AMOUNT OF INSURANCE as shown on the Declarations Page.

The Other Insurance paragraph under GENERAL PROVISIONS IN THE EVENT OF LOSS does not apply to PART G: PERSONAL PROPERTY COVERAGE.

# GENERAL CONDITIONS AND EXCLUSIONS

**BOAT SHOW AND DEMONSTRATION:** We provide coverage when the **Insured Vessel** is exhibited at a boat show or when the **Insured Vessel** is being navigated by a **Covered Person** for demonstration purposes.

**BROADENING COVERAGE:** If we make any revision to this policy form during the Policy Period which broadens the coverage without additional premium, the broadened coverage will apply as of the effective date of such revision.

**CHANGES IN POLICY:** This policy contains all of the agreements between **you** and **us**. Its terms may not be changed or waived except by an endorsement issued by **us**. If a change requires a premium adjustment, we will adjust the premium as of the effective date of the policy change.

**CHOICE OF LAW / CONFORMITY TO STATE LAW:** This Policy shall be construed in accordance with the General Maritime Law or Admiralty Rule. If no General Maritime Law or Admiralty Rule applies, the law of the State appearing in your address as contained upon the Declarations Page will apply without regard to the conflict of laws provisions thereof. Any provision of this Policy that would be invalid under applicable law shall be amended to the extent necessary for such provision to be in conformance with such law.

**POLICY PERIOD:** This policy applies only in the event of an **Occurrence** which takes place during the Policy Period as shown on the Declarations Page.

**POLICY PREMIUM AND RENEWAL:** The premium shown on the Declarations Page is the initial premium for this policy. If we agree to renew or continue the policy, then at the time of each renewal or continuation, on the policy anniversary date, the premium for the renewal or continuation will be computed by **us** according to our premium rules, forms and guidelines then in use.

MA-14558b (04/10)

**CANCELLING THE POLICY: You** may cancel this policy by returning it to **us** or **our** authorized agent, or by advising **us** or **our** authorized agent in writing, stating the future date **you** want it to be cancelled. **We** may cancel this policy by delivering or mailing to **you** at **your** last address shown on **our** records, written notice stating when, not less than fifteen (15) days after mailing, the policy will be cancelled. Delivery or mailing of this notice to **you** shall be sufficient proof that notice of cancellation was given. The date of the cancellation stated in the notice shall become the end of the Policy Period.

**RETURN PREMIUMS:** If this policy is cancelled, **you** may be entitled to a premium refund. Return premiums will be computed on a pro-rata basis. Any return premium will be paid to **you** as soon as possible after the cancellation. No premiums will be returned to **you** if we have paid **you** for a Total Loss or **Constructive Total Loss.**

**ASSISTING OTHERS IN DISTRESS: We** will provide coverage while **you** are attempting to aid other non-owned vessels in distress, provided there is no consideration for your services.

**TOWING EXCLUSION:**

    a.  **We** do not provide coverage for loss or damage resulting from the **Insured Vessel** as shown on the Declarations Page towing any other vessel, excepting:

        i.  a **Dinghy/Tender** owned by **you**;

        ii.  non-owned vessels in distress or unintentionally disabled, provided there is no consideration for **your services**;

        iii.  the **Insured Vessel** towing another vessel owned by **you** while navigating inland waters, rivers or the Great Lakes, subject to the Navigation Warranty attached to this policy.

    b.  **We** do not provide coverage for loss or damage to the **Insured Vessel** while it is being towed, excepting:

        i.  when the purpose of such a tow is an attempt to aid the **Insured Vessel** while it is in distress or unintentionally disabled;

        ii.  when another vessel owned by **you** is towing the **Insured Vessel** while navigating inland waters, rivers or the Great Lakes, subject to the Navigation Warranty attached to this policy.

**PRIVATE PLEASURE USE ONLY:** This policy only provides coverage while the **Insured Vessel** is used for private pleasure purposes. However, this limitation on use does not apply while **you** are operating or using the **Insured Vessel** to entertain business associates or clients or other similar types of use wherein no monetary or other directly related remuneration is received by **you** in relation to operation or use of the **Insured Vessel.**

**LIMITS ON USE:** Unless **we** have provided **you** with prior written authorization to deviate from the navigation limit stated on the Declarations Page, no coverage exists under this policy for any claim, suit, loss, damage, expense, liability or **Occurrence** where the **Insured Vessel** is navigated, afloat, operated, used, stored, ashore, on land, in transit, transported or otherwise located outside the navigation limit specified on the Declarations Page. However, if the Navigation Warranty included in this policy, or the **Lay-Up** Warranty shown on the Declarations Page, is breached due to matters beyond **your** or a **Covered Person's** control, the policy will remain in effect, but only if **you** give **us** written notice of the breach within ten (10) days after the breach and pay any additional premiums due for this extension of coverage.

**LAY-UP WARRANTY:** It is expressly warranted by **You** that the **Insured Vessel** will be in **Lay-up** and out of commission the for the period of time shown on the **Declarations.** During the **Lay-up** period, the **Insured Vessel** must be maintained for the conditions reasonably expected during such period. In addition, the **Insured Vessel** shall not be used or operated for any boating related activities or as living quarters during the **Lay-up** period.

**WAR, CONFISCATION AND CONTAMINATION: We** do not provide any coverage for loss, damage, liability or expense due to:

    a.  war, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by military force or military personnel, destruction or seizure for military purpose and including any consequence of these;

    b.  the lawful or unlawful capture, seizure, confiscation, requisition or detainment of the **Insured Vessel** by a civil or military authority or an attempt at any of these;

    c.  radioactive, chemical, biological, bio-chemical or electromagnetic contamination.

**TERRORISM EXCLUSION: We** do not provide coverage for any loss, damage or expense from a certified act of terrorism. For the purpose of this clause, "certified act of terrorism" is defined as any act of terrorism as defined in the U.S. Federal Terrorism Risk Insurance Act of 2002, as amended by the Terrorism Risk Insurance Program Reauthorization Act of 2007 and its amendments.

**CONCEALMENT, MISREPRESENTATION OR FRAUD:** All coverage provided by **us** will be voided from the beginning of the Policy Period in any case of fraud by **you**. It is also void if **you** conceal or misrepresent any material fact or circumstance relating to this contract of insurance, or the application for such insurance, whether before or after a loss.

**DISHONEST, ILLEGAL OR INTENTIONAL ACTS: We** do not pay for loss or damage caused by the dishonest, illegal or intentional acts of any **Covered Person**, or any person to whom the **Insured Vessel** is entrusted, regardless of whether or not such person is convicted of such an act by a criminal court.

**NO BENEFIT TO OTHERS:** No person or organization, which has custody of the **Insured Vessel** and is to be paid for services, will benefit from this insurance.

**TRANSFER OF INTEREST:** All coverage provided by **us** will terminate upon the sale, assignment, transfer or pledge of the **Insured Vessel** or of this policy unless prior written consent has been obtained from **us**.

## GENERAL PROVISIONS IN THE EVENT OF LOSS

**ASSISTANCE AND COOPERATION:** Any **Covered Person** making a claim must:
 a. cooperate with **us** in the investigation, settlement or defense of any claim or suit under this policy;
 b. assist **us** in the enforcement of any right of contribution or indemnity against any person or organization which may be liable to any **Covered Person**;
 c. allow **us** to inspect and appraise all damaged property, not stolen or otherwise unrecoverable, before it is repaired or disposed of;
 d. submit to examinations under oath as often as requested by **us**;
 e. sign a written authorization permitting **us** to obtain medical files and other pertinent records;
 f. submit at **our** expense and as often as **we** reasonably require, to physical examinations by physicians **we** select and at the time and place **we** select;
 g. not assume any obligation or admit any fault or liability that **you** or **we** may be liable for without first obtaining **our** written consent; and
 h. not incur any expenses that **we** may be liable for without first obtaining **our** written consent; the only expenses that may be incurred without obtaining **our** written consent are those covered under PART C: MEDICAL PAYMENTS COVERAGE of this policy, or as described in PART A: PROPERTY DAMAGE COVERAGE in the Protection Against Loss and Salvage section.

**CLAIM OR SUIT AGAINST A COVERED PERSON:** If a claim is made or suit is brought against a **Covered Person** for liability that may be covered under this policy, **you** must immediately notify **us** and send **us** every demand, notice, summons or other legal papers received by **you** or **your** representative. **We** will have the option of naming attorneys to represent the **Covered Person**. Payments by **us** for the cost of legal defense of the **Covered Person** will be in addition to payments **we** make under PART B: LIABILITY COVERAGE. This coverage does not increase **our** per Occurrence limit of liability and **we** will pay no more than the AMOUNT OF INSURANCE shown on the Declarations Page under PART B: LIABILITY COVERAGE. Once the PART B: LIABILITY COVERAGE AMOUNT OF INSURANCE has been exhausted by payment for liability by **us**, **we** shall no longer pay defense costs for any claim or suit against a **Covered Person**.

**SUIT AGAINST US: You** may not bring a suit against **us** unless **you** have complied with all terms and conditions of this policy. In addition:
 a. with respect to any claim or loss to the **Insured Vessel**, any suit against **us** must commence within one (1) year of the date of loss or damage;
 b. with respect to any other claim for loss, no suit may be brought against **us** until the amount of the **Covered Person's** obligation to pay has been determined by final judgments after trial or by written agreement signed by **you**, **us** and the claimant; any such legal action against **us** must commence within one (1) year of the date of judgment or written agreement;
 c. no one shall have any right to join **us** as a party to any action against a **Covered Person**;
 d. if any time limitations of this policy are prohibited or invalid under applicable law, then legal action against **us** must commence within the shortest limitation of time permitted by applicable law.

**ARBITRATION:** Any controversy or claim, whether based on contract, tort, statute or other legal or equitable theory (including but not limited to any claim of fraud, misrepresentation or fraudulent inducement, arising out of or related to this policy, the interpretation, enforcement, or breach thereof, or the handling of any claim involving this policy), shall be referred to and settled by arbitration in accordance with the then current CPR Institute for Dispute Resolution Rules for Non-Administered Arbitration and this provision. The arbitration shall be governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, implemented at 9 U.S.C. §§ 201-208, or if said Convention shall be held not to be applicable, by the United States Arbitration Act, 9 U.S.C. §§

1-16, to the exclusion of any provision of state or other law inconsistent therewith or which would produce a different result, and judgment upon the award rendered by the arbitrator may be entered by any court having jurisdiction. The arbitration shall be held in the State appearing in **your** address as contained upon the Declarations Page and in accordance with the following procedure:

    a. **You** and **we** will agree on a single arbitrator to decide the dispute, whose fee will be paid fifty percent (50%) by **you** and **us**;

    b. If **you** and **we** are unable to agree on a single arbitrator, **you** and **we** will each appoint an arbitrator and those two (2) arbitrators will appoint a third arbitrator. The three (3) arbitrators will decide the dispute by a majority vote. **You** will pay the fee of the arbitrator that **you** appoint. **We** will pay the fee of the arbitrator that **we** appoint. **You** and **we** will each pay fifty percent (50%) of the fee charged by the third arbitrator;

    c. **You** and **we** will each pay fifty percent (50%) of the fee charged by the American Arbitration Association to coordinate the arbitration;

    d. The request for arbitration must be filed within one (1) year of the date of loss or damage; and

    e. **We** may arbitrate the amount of **your** loss or damage without waiving **our** right to determine coverage or a lack of coverage for the loss.

**NOTICE OF LOSS: You** must report in writing to **us**, or **our** authorized agent, as soon as possible after an **Occurrence** that may be covered under this policy. This notice should state when, where and how the event occurred, and should include the names and addresses of any witnesses. **You** are also required to notify the police and file a police report as soon as **you** are aware that **your** property has been stolen, vandalized or there is a mysterious disappearance. If **you** do not provide the notice to **us** as required by this section as soon as possible, any claim under this policy will be voided.

**PROOF-OF-LOSS: You** must file with **us** or **our** authorized agent, as soon as possible after **our** written request, a detailed proof-of-loss signed and sworn to by **you** setting forth to the best of **your** knowledge, the facts of the loss. See PART C: MEDICAL PAYMENTS COVERAGE for special proof-of-loss requirements for medical payments claims.

**PAYMENT OF LOSS: We** will pay for any claim of covered **Property Damage** or damage to **Personal Property you** incur under this policy to the **Named Insured**, and any loss payee, as shown on the Declarations Page, within thirty (30) days after:

    a. receiving a signed sworn proof of loss statement or masters protest, receiving a release of liability; and

    b. proof of **your** interest in the **Insured Vessel** is given to **us**; and

    c. reaching an agreement with **you**; or

    d. the entry of final judgment; or

    e. the filing of an arbitration award with **us**.

However:

    a. **we** will not pay a loss that has been paid by others;

    b. should a covered loss to the **Insured Vessel** result in a **Total Loss** or **Constructive Total Loss**, the policy premium shall be paid in full prior to the final claim payment; and

    c. the loss payee's rights are no greater than those of the **Named Insured** under this contract.

**OUR RIGHT TO RECOVER:** If any person or organization to or for whom **we** make payment under this policy has rights to recover damages from another, those rights are transferred to **us**. That person or organization must do everything necessary to secure **our** rights and must do nothing to impair them. Any recovery made by **us** shall be first applied up to the amount **we** paid and then the remainder, if any, to **you** and **we** shall be entitled to said payment, recovery, reimbursement or subrogation regardless of whether the total amount of the recovery received by **you** on account of an **Occurrence** covered by this policy is less than the actual loss or damage sustained by **you**.

**We** will not waive **our** rights to recover against any person or entity for their liability for any loss to the **Insured Vessel** except a yacht club, marina or similar facility for the purpose of storage or slip rental which requires waiver of subrogation by written contract entered into by **you** prior to the date of an **Occurrence** but only to the extent of said waiver.

**RIGHT TO SALVAGE:** If **we** make payment for **Property Damage** under this policy under PARTS A: PROPERTY DAMAGE COVERAGE, PART F: VESSEL TRAILER COVERAGE or PART G: PERSONAL PROPERTY COVERAGE, **we** may, but are not obligated to, take possession of the remains or proceeds of the damaged property. If **we** take possession of the damaged property, **you** agree to transfer title of that property to **us** or any persons or party designated by **us** prior to payment of loss.

MA-14558b (04/10)                                                                                      Page 10 of 11

**ABANDONMENT:** If we take any steps to protect damaged property, this does not mean we are accepting an abandonment of the property. And, if **you** take steps to protect damaged property, this does not mean **you** are waiving any rights **you** have to abandon the property.

**OTHER INSURANCE:** If any **Covered Person** has any other valid and collectible insurance against a **Property Damage** loss covered under this policy, we will not pay for any greater proportion of the loss than **our** applicable AMOUNT OF INSURANCE stated on the Declarations Page bears to the total amount of insurance covering the loss. With respect to a liability, medical payments and/or **Uninsured Boater** loss, any insurance provided by this contract shall be deemed excess over all other valid and collectible insurance.

**TRADE OR ECONOMIC SANCTIONS:** This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims. All other terms and conditions of the policy remain unchanged.

**SIGNATURES**

The only signatures applicable to this policy are those representing the company named on the Declarations Page.

GEORGE D. MULLIGAN, Secretary

JOHN J. LUPICA, President

Insurance Company of North America
Philadelphia, Pennsylvania
Indemnity Insurance Company of North America
Philadelphia, Pennsylvania

ACE American Insurance Company
Philadelphia, Pennsylvania
ACE Fire Underwriters Insurance Company
Philadelphia, Pennsylvania

*This is not a complete and valid insurance policy
without an accompanying Declarations Page*

MA-14558b  (04/10)

STEVEN A. HOLPER, et al.

v.

ACE AMERICAN INS. Co.

Ex. "3"



ACE Recreational Marine   (908) 860-4674 tel
150 Allen Road, Suite 101  (215) 861-6555 fax
Basking Ridge, New Jersey *nicole.nava@acegroup.com*
07920

January 28, 2013

George R. Carter & Associates
1050 East Sahara Avenue, Suite 301
Las Vegas, NV 89104

### VIA REGULAR AND CERTIFIED MAIL – RETURN RECEIPT REQUESTED

Re:   Named Insured:   Steven A. Holper
       Claim No:       JY12J0415393
       Policy No:       Y08598964 (5/21/12 ~ 5/21/2013)
       Date of Loss:    July 4, 2012
       Issuing Co. :    ACE American Insurance Company

Dear Mr. Carter:

You have notified ACE American Insurance Company ("ACE") of a claim for damages being made against your client, Kera Holper, by her husband, Steven A. Holper, as a result of an incident which occurred on July 4, 2012.

As you are aware, Steven A. Holper is a named insured under a Yachtsman Policy No. Y08598964, for the policy period beginning 05/21/2012 to 05/21/2013. This policy provides Liability Coverage for bodily injury and property damage in the amount of $500,000.00. The policy also includes Medical Payments coverage in the amount of $25,000.00.

The Medical Payments coverage limit of $25,000.00 was previously issued to your client, Steven A. Holper, as a result of the injuries sustained on July 4, 2012.

It is our understanding your office intends to pursue a bodily injury liability claim on behalf of Dr. Holper, as well as a loss of consortium claim for Mrs. Holper, and is demanding payment of the bodily injury coverage limit of $500,000.00.

According to the facts provided by your office, Mrs. Holper had been asleep in the cabin of the insured vessel when it began to forcibly sway. She went to the deck to continue to rest on the sofa. She then noticed the boat's gear appeared to be in the reverse position, so she went to the control panel intending to put the gear back in the neutral position, however, she mistakenly shifted the gearshift from neutral into reverse.

Mrs. Holper was unaware that Dr. Holper, or anyone else, was in the lake at the rear of the boat. Thereafter, she heard her husband's screams and rushed to the rear of the boat. She first thought her husband was having a heart attack, until she saw the blood in the water, and then jumped into the lake to rescue and/or assist her husband. Before getting into the water, Dr. Holper had previously put the boat's two motors in neutral and jumped into the water to re-secure the vessel to the beach.

Immediately after the incident, Dr. Holper was taken to the hospital and underwent emergency surgery for "closure of posterior thigh lacerations, repair of scrotal laceration, and encirclement of right sciatic nerve with neural tube".

Based on the facts as we presently know them, Kera Holper is requesting ACE provide a defense and indemnification for claims being brought against her by her husband, Dr. Steven A. Holper.

Please consider this our formal position with regard to your client's request for coverage.

Your attention is directed to the following pertinent policy provisions:

## PART B: LIABILITY COVERAGE

**PERILS INSURED AGAINST: We** will pay sums that a **Covered Person** becomes legally obligated to pay as a result of the ownership, operation or maintenance of the **Insured Vessel** because of:

a.  **Bodily Injury** or loss of life;
b.  **Property Damage;**
c.  **Pollution;**
d.  attempted or actual raising, removal or destruction of the wreck of the **Insured Vessel;**
e.  failure to raise, remove or destroy the wreck of the **Insured Vessel;**
f.  liability to paid crew as defined in the Jones Act or under General Maritime law.

The following pertinent definitions apply to this insuring agreement:

**DEFINITIONS:** Throughout this policy, **you** and **your** refer to the **named insured** as shown in the Declarations Page, and **we, us** and **our** refer to the company providing the insurance. In addition, certain words and phrases are defined as follows:

**Bodily Injury** means physical bodily injury, sickness or disease arising from an **Occurrence** sustained by a person, including death resulting from any of these.

**Covered Person** is defined as **you,** or any person or legal entity while operating the **Insured Vessel** as shown on the Declarations page with **your** direct and prior permission. It does not include any person or legal entity operating the **Insured Vessel** and acting in the capacity of

employee or agent of a marina, repair yard, yacht club, sales agency, boat service station, towing or salvage entity or other similar organization. However, **we** will cover non-contractual liability of a **Covered Person** for **Bodily Injury** or **Property Damage** caused by any of these persons or organizations.

**Property Damage** means accidental, direct physical loss or damage to tangible property arising from an **Occurrence**. Tangible property does not include money, stocks, bonds, deeds, mortgages, or other instruments of a similar nature.

**Occurrence** means a loss or accident to which this insurance applies and which takes place within the policy period appearing upon the Declarations Page of this policy.

**EXCLUSIONS: We** do not provide coverage under **PART B: LIABILITY COVERAGE** for:

a. liability of other **Covered Persons** to **you** or any **Resident Relative**;
b. **your** liability to any **Resident Relative**;
c. liability assumed by a **Covered Person** under any contract or agreement;
d. fines or other penalties that any government unit requires **you** to pay other than as provided by MARITIME ENVIRONMENTAL DAMAGE COVERAGE below;
e. punitive damages; and
f. liability arising from the use of motorized land vehicles for land conveyance, aircraft, submersible and semi-submersible watercraft.

**LIMITS OF LIABILITY: We** will pay no more than the PART B: LIABILITY COVERAGE AMOUNT OF INSURANCE shown on the Declarations Page arising out of any one (1) **Occurrence**, regardless of the number of **Covered Persons** involved, claims made or suits brought; or persons or organizations making claims or bringing suits.

In addition, with respect to **Pollution, we** will pay up to the amount necessary to satisfy **your** statutory limit (with respect to pollution liability) as specified in the Oil Pollution Act of 1990 (and any subsequent amendments). This is in addition to PART B: LIABILITY COVERAGE AMOUNT OF INSURANCE. However, nothing herein shall serve as or otherwise certify that this policy is evidence of the maintenance of any financial guarantee or obligation requirement by law, statute or otherwise.

**Resident Relative** means a person who at the time of an **Occurrence** is related by blood, marriage, civil union or adoption to the named insured, spouse or domestic partner, and who resides in the named insured's household, even if temporarily living somewhere else. Resident Relative includes any ward or foster child who usually resides within the named insured's household.

Page 3/3

As a Named Insured, Dr. Holper is a Covered Person as defined by the policy.   Throughout this policy, the terms you and your refer to the named insured, as shown in the Declarations Page.

Since Kera Holper is related to Dr. Holper by marriage (she is his spouse), and resides in Dr. Holper's household, she is also considered a Covered Person by definition.

Based on the aforementioned policy language and in concert with the facts as you provided, Kera Holper would be considered a Covered Person as defined by the policy.   We do not provide coverage under PART B: LIABILITY COVERAGE for liability for other Covered Persons to you or any Resident Relative.

As stated in prior correspondence, we respectfully disagree with your interpretation of the policy. The policy clearly and unambiguously excludes coverage for a bodily injury claim asserted by one "Covered Person" against another "Covered Person."   We regret being unable to provide service to you at this time.   ACE Private Risk Services otherwise reserves all of its rights under the policy by citing specific provisions in this letter, does not intend to waive any other contract terms or rights under the policy.

Sincerely,

Nicole Nava
Casualty Claims Specialist
ACE Private Risk Services
Office: (908) 860-4674
Fax:    (215) 861-6555
Email: nicole.nava@acegroup.com

cc:     Global Marine Insurance Agency

Page 4/4

Steven A. Holper, et al.

V.

Ace American Ins. Co.

Ex." 4"



*Law Offices of*

# GEORGE R. CARTER & ASSOCIATES

**TELEPHONE**
**(702) 384-8951**

1050 East Sahara Avenue, Suite 301
LAS VEGAS, NEVADA 89104

**FAX NUMBER**
**(702) 384-0475**

February 25, 2013

*Via fax to: (215) 861-6555*
And Regular Mail

Nicole Nava, Claims Analyst
ACE RECREATIONAL MARINE
150 Allen Road, Suite 101
Basking Ridge, New Jersey 07920

|   |   |   |
|---|---|---|
| Re: | My Clients: | Kera and Steven A. Holper, M.D. |
|  | Named Insured: | Steven A. Holper, M.D. |
|  | Covered Person/Insured: | Kera K. Holper |
|  | Your Claim No.: | JY12J0415393 |
|  | Your Policy No.: | Y08508964 |
|  | Date of Loss: | 07/04/2012 |

Dear Ms. Nava:

I am responding to your January 28, 2013 communication. You are correct in your assertion that my client Kera Holper is requesting "ACE provide a defense and indemnification for claims being brought against her by her husband, Dr. Steven A. Holper."

You go on to acknowledge that "Based on the aforementioned policy language and in concert with the facts as provided, Kera Holper would be considered a Covered Person as defined by the policy."

Our only disagreement appears to be ACE's attempts to defeat or evade coverage by applying one of the policy exclusions, which reads: "We do not provide coverage under PART B: LIABILITY COVERAGE for: **a.** liability of other **Covered Persons** to you or any **Resident Relative**."

Moreover, in previous communication received from you dated November 26, 2012, you further acknowledged that the word "other", as used in the exclusion in question, is "an *undefined* term in the policy."

In light of all of the above, it is unconscionable how ACE can deny coverage under these circumstances, particularly when the sole basis for its decision appears to rest upon a key word utilized in the exclusion (i.e., "other"), which has <u>not</u> been defined by policy definition.

Nicole Nava, Claims Analyst/ACE INS. CO.
Re: Dr. & Mrs. Steven A. Holper
Your Claim No.: JY12J0415393
February 25, 2013
Page 2


     This fact alone is somewhat indicative of a material breach of contract, as well as a breach of the covenant of good faith and fair dealing ACE owes to Dr. & Mrs. Holper as the Named Insured and a Covered Person, as the policy itself has defined their statuses to be, and which has been acknowledged by you and ACE.

     Nonetheless, and in an attempt to resolve this matter without expensive and lengthy litigation, my clients respectfully request that ACE join them in seeking "joint" declaratory relief from a district court judge here in Nevada so as to have the Judge interpret the policy language and determine the applicability of the exclusion in question.

     However, my clients would further request that the following stipulation or agreement be made among the parties prior to seeking joint declaratory relief, such as:

1.     In the event the district court rules in favor of my clients, that ACE forthwith tender its bodily injury (BI) policy limit of $500,000 as full payment of my clients' bodily injury and loss of consortium claims.

2.     The parties however reserve their rights to appeal any decision made by the Judge, if either party so desires.

     Please advise of ACE's decision regarding this matter at your earliest opportunity so that I may advise my clients accordingly.

     Thanking you in advance for your continued courtesy and timely attention.  If you should have any questions regarding the contents of this letter, please do not hesitate to contact me or my legal assistant, Ron.

                Very truly yours,

                **LAW OFFICES OF**
                **GEORGE R. CARTER**

                George R. Carter, Esq.

GRC/rb
cc:    Nevada State Insurance Commissioner/Attn: Compliance Division, 2501 East Sahara Avenue, Room 302, Las Vegas, Nevada 89104
      Clients

STEVEN A. Holper, et al.

V.

ACE American Ins. Co.

Ex. "5"



ACE Recreational Marine          (908) 860-4674 *tel*
150 Allen Road, Suite 101        (215) 861-6555 *fax*
Basking Ridge, New Jersey 07920  *nicole.nava@acegroup.com*

November 26, 2012

George R. Carter, Esq.
1050 E. Sahara Ave., Ste. 301
Las Vegas, Nevada 89104

Re:    Your Client:      Steven A. Holper, M.D.
       Insurer:          ACE American Insurance Company
       Policy no.:       Y08508964
       Claim no.:        JY12J0415393
       Date of Loss:     07/04/2012

Dear Mr. Carter:

Please be advised that a check made payable to you and your client in the amount of $25,000 has been issued and is being sent under separate cover. You should receive the check in the near future.

While we appreciate your response to our position on coverage, we respectfully disagree with your assessment that the undefined term "other" in the policy does not apply to Mrs. Holper. Enclosed for your review is a complete copy of the "Yachtsman" policy.

Should you have any additional questions or concerns, feel free to contact me at the number listed below.

Sincerely,

Nicole Nava
Claims Analyst
ACE Private Risk Services
Office: (908) 860-4674
Fax:    (215) 861-6555
Email: nicole.nava@acegroup.com

*One of the ACE Group of Insurance & Reinsurance Companies*



RETURN RECEIPT
REQUESTED



7012 3460 0001 6398 2796

BA# 3813
COMMISSIONER OF INSURANCE
2501 E. Sahara Ave., Suite 302
Las Vegas, NV 89104

Address Correction Requested

ACE AMERICAN INSURANCE COMPANY
ATTN: SAVERIO M ROCCA ESQ
436 WALNUT STREET, WA04K
PHILADELPHIA PA 19106

APR 3 0 2013